On appellant's petition for reconsideration filed June 7, former opinion filed May 8 (34 Or App 175, 578 P2d 447), petition for reconsideration granted; former opinion adhered to as modified July 5, petition for review allowed November 15, 1978

STATE OF OREGON, *Respondent,*

*v.*

ROBERT BRUCE HEINTZ, *Appellant.*

(No. 17-023, CA 8026)

580 P2d 1064

[ 155 ]

Gary D. Babcock, Public Defender, Thomas J. Crabtree, Deputy Public Defender, Mark E. Birge, Certified Law Student, Salem, for petition.

JOHNSON, J.

**JOHNSON, J.**

Defendant petitions for reconsideration of our decision reported in *State v. Heintz,* 34 Or App 175, 578 P2d 447 (1978). The purpose of this opinion is to state our reasoning with respect to defendant's third assignment of error, discussion of which was omitted from our original opinion.

■ Defendant contends in his third assignment that the trial court erred in denying his motion to set aside the judgment and grant a new trial. The motion was based upon two acts of alleged misconduct by the trial judge. First, the trial judge, together with the court reporter and the bailiff, dined with the jury after the case had been submitted but before a verdict had been reached. The only evidence concerning this event is the trial court's statement in a letter to defendant's counsel accompanying the order denying the motion. The trial court stated:

> "Your tenth complaint concerns dining arrangements. The jury, bailiff, and reporter were told that no further deliberations or discussion of the case would occur until after their return from dinner. Thereupon the three of us, acting on my instructions dined with the jury and saw to it that outsiders were kept away. This, as you know, is not always possible in the courthouse area where no real private rooms are available and where many witnesses including sheriff's officers dine and have coffee."

Defendant contends that these dining arrangements violated the provisions of ORS 17.305[1] and 17.325.[2]

---

[1] ORS 17.305 provides:

"After hearing the charge, the jury may either decide in the jury box or retire for deliberation. If they retire, they must be kept together in a room provided for them, or some other convenient place, under the charge of one or more officers, until they agree upon their verdict or are discharged by the court. The officer shall, to the utmost of his ability, keep the jury together, separate from other persons, without drink, except water, and without food, except ordered by the court. He must not suffer any communication to be made to them, nor make any himself, unless by order of the court, except to ask them if they have agreed upon their verdict, and he shall not, before the verdict is

However, the record indicates that ORS 17.305 and 17.325 were fully complied with since there is no evidence of any communication between the court officials and the jury.

■ The second incident concerns the playing for the jury of a part of a tape recording which was admitted into evidence during the trial. Defendant's affidavits are the only evidence concerning this event. The affidavit of defendant's counsel is typical of the other affidavits and states:

"He [the judge], as I can best recall, advised [me, defendant's attorney] that he had repositioned an audio tape which only a portion had been admitted into evidence, doing so to insure the jury would not hear the portion not in evidence. That he then left it for the jury to play, or that he caused some to be replayed for them, or that he replayed it for them himself. As to these alternatives I am not exactly sure."

Defendant contends the trial court violated ORS 17.325. The Attorney General responds as follows:

"Even if the judge played the tape for the jury, there was no error. The tape was evidence which the jury was entitled to consider during its deliberations pursuant to ORS 17.320. ORS 17.325 merely limits the judge in providing information on 'any point of law,' but not evidence. If the judge repositioned the tape in order to prevent the jury from hearing the portion which had not been introduced in evidence, then he was merely seeking to protect the fairness of defendant's trial. Although defendant does not specifically allege that the jury heard the other portions of the tape, even that occurrence would be harmless error in this case. The conversation

rendered, communicate to any person the state of the deliberations or the verdict agreed on. Before any officer takes charge of a jury, this section shall be read to him, and he shall be then sworn to conduct himself according to its provisions to the utmost of his ability."

[2]ORS 17.325 provides:

"After the jury have retired for deliberation, if they desire to be informed of any point of law arising in the case, they may require the officer having them in charge to conduct them into court. Upon their being brought into court, the information required shall be given in the presence of, or after notice to the parties or their attorneys."

which defendant introduced in evidence is preceded on the tape by two previous 'conversations' with the same officer, during which defendant is merely asked whether a blood sample can be taken. Apparently, defendant merely nodded his head in response to the requests. His voice is not audible during that portion of the tape. No conceivable prejudice to the defendant is apparent either from his allegations or his insinuations."

We adopt the Attorney General's view and conclude that the trial court did not abuse its discretion in denying the motion for a new trial. *Cf., State v. Cummings,* 33 Or App 265, 576 P2d 36 (1978).

Petition for reconsideration granted, former opinion adhered to as modified.